UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM E. BROWN, <br><br> Plaintiff, <br><br> v. <br><br> R. AMIS, et al., <br><br> Defendants. | Case No. 16-cv-00603-HSG (PR) <br><br> **ORDER GRANTING MOTION TO DISMISS CERTAIN CLAIMS AND DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE TO REFILING; ADDRESSING PENDING MOTIONS** <br><br> Re: Dkt. Nos. 39, 50, 51, 56, 58, 62 |

**INTRODUCTION**

On March 3, 2016, plaintiff, an inmate at California State Prison, Los Angeles County ("CSP-LAC"), filed a *pro se* complaint under 42 U.S.C. § 1983. Plaintiff's original complaint was dismissed with leave to amend on the grounds that the claims were difficult to discern, and there was a wide variety of claims that were improperly joined, in violation of Federal Rule of Civil Procedure 20(a). On October 3, 2016, plaintiff filed an amended complaint alleging violation of his religious rights at Pelican Bay State Prison ("PBSP"), where he was previously incarcerated. The Court found that, when liberally construed, plaintiff's allegations appear to state cognizable claims under § 1983 for violation of the First Amendment, Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act. ("RLUIPA"), 42 U.S.C. § 2000cc-1. Defendants PBSP correctional officer Espinoza, PBSP lieutenant R. Amis, and PBSP community resource manager Robert Losacco were ordered served. Now before the Court is defendants' motion to dismiss plaintiff's injunctive relief claims and motion for summary judgment on exhaustion grounds. Plaintiff has filed an opposition, and defendants have filed a reply.

**BACKGROUND**

According to the amended complaint, plaintiff belongs to a religious community that identifies itself as United Kings against Genocidal Environments ("KAGE"). Dkt. No. 25 at 7-8, 14.[1] Plaintiff alleges that on January 13, 2015, non-defendant prison chaplain Alex Valuiski permitted KAGE members to assemble in the PBSP Facility A chapel. *Id.* at 7. At or around this time, however, defendants Amis and Espinoza confiscated plaintiff's religious materials and denied him the right to religious assembly. *Id.* at 7-8, 12. Plaintiff further asserts that defendant Losacco prohibited plaintiff from assembling in the prison chapel until he changed the name of his religious ideology to that of a nonreligious group known as Prisoners Embracing Anti-Hostilities Cultural Evolution ("PEACE"). *Id.* at 14. Plaintiff asserts that defendant Losacco and non-defendant PBSP Warden Ducart had previously granted KAGE the right to religious assembly via a formal grant of plaintiff's inmate appeal, PBSP-A-14-2313. *Id.* This grant was made without any condition that the group change its name. *Id.* Plaintiff seeks damages and injunctive relief. *Id.* at 19.

**DISCUSSION**

**I. Motion to Dismiss**

Defendants move to dismiss plaintiff's injunctive relief claim as moot pursuant to Federal Rule of Civil Procedure 12(b)(1). Under Rule 12(b)(1), a party may move to dismiss based on the court's lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Because mootness pertains to a federal court's subject-matter jurisdiction, it is properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "[I]n a Rule 12(b)(1) motion, the district court is not confined by the facts contained in the four corners of the complaint—it may consider facts and need *not* assume the truthfulness of the complaint." *Americopters, LLC v. F.A.A.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006).

When an inmate has been transferred to another prison and there is no reasonable

---

[1] All page numbers used herein refer to those affixed to the top of the page by the Court's electronic filing program.

expectation nor demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, the claim for injunctive relief should be dismissed as moot. *See Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995); *see also Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (same for claims for declaratory relief). A claim that the inmate might be transferred back to the prison where the injury occurred is too speculative to overcome mootness. *Dilley*, 64 F.3d at 1369. The fact that other inmates will continue to be subject to the allegedly improper policies also does not overcome mootness because those inmates can bring their own cases. *Alvarez*, 667 F.3d at 1065.

When plaintiff filed his amended complaint, he was still incarcerated at PBSP, where the alleged denials of his right to practice his religion and right to religious assembly were taking place. Plaintiff sought injunctive relief to remedy these alleged injuries. On March 24, 2017, plaintiff notified the Court that he had been transferred to California State Prison, Sacramento (dkt. no. 33), and on October 19, 2017, plaintiff notified the court that he had been transferred to California State Prison, Los Angeles County (dkt. no. 44). Because plaintiff has not been incarcerated at PBSP since March 2017, and fails to demonstrate a reasonable expectation or probability that he will be housed at PBSP again, his claim for injunctive relief from the conditions of his confinement at PBSP must be dismissed as moot.

For similar reasons, plaintiff is no longer entitled to relief on his RLUIPA claim. Plaintiff's claims for injunctive relief are moot, and a claim under RLUIPA may proceed only for injunctive relief against defendants acting within their official capacities. *Wood v. Yordy*, 753 F.3d 899, 901 (9th Cir. 2014) (RLUIPA does not contemplate liability of government employees in individual capacity); *Alvarez*, 667 F.3d at 1063 (money damages not available for RLUIPA claim against defendants sued in their official capacity).

Accordingly, plaintiff's injunctive relief claim and RLUIPA claim will be DISMISSED on the basis of mootness.[2]

---

[2] Should plaintiff seek to allege that some or all of his claims extend to the conditions of his confinement at CSP-LAC, those claims must be brought in a separate lawsuit in the United States District Court for the Central District of California, the proper venue for federal claims arising in Los Angeles County. *See* 28 U.S.C. § 1391(b); 28 U.S.C. § 84(c).

3

**II. Motion for Summary Judgment**

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)). The nonmoving party must show more than "the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby,* 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or

4

weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Here, plaintiff's verified amended complaint (dkt. no. 25) is considered in evaluating the motion for summary judgment.

### A. Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and no longer left to the discretion of the district court. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards." *Id*. Even when the relief sought cannot be granted by the administrative process, i.e., monetary damages, a prisoner must still exhaust administrative remedies. *Id*. at 85-86 (citing *Booth*, 532 U.S. at 734). The PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies. *Id*. at 93. An action must be dismissed unless the prisoner exhausted his available administrative remedies *before* he or she filed suit, even if the prisoner fully exhausts while the suit is pending. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002); *see Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (where administrative remedies are not exhausted before the prisoner sends his complaint to the court it will be dismissed even if exhaustion is completed by the time the complaint is actually filed).

California state prison inmates are required to complete three levels of appeals to exhaust all available administrative remedies: the first level of review by an appeals officer; the second

5

level of review by the institution head or designee; and the third level of review by the Chief of Appeals for CDCR. Cal. Code Regs. tit. 15, § 3084.7. In certain instances, the first level of review may be bypassed. *Id.* Inmates must submit their initial appeal within 30 calendar days of "[t]he occurrence of the event or decision being appealed, or first having knowledge of the action or decision being appealed." *Id.* at § 3084.8(b). Inmates must also submit their appeals to higher levels of review within 30 calendar days of receiving the first or second level appeal decision. *See id.* Only a third-level decision exhausts all available administrative remedies. *Id.* at § 3084.1(b). A cancellation or rejection does not. *Id.*

Nonexhaustion under § 1997e(a) is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 211 (2007). Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints. *Jones*, 549 U.S. at 215-17. In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). Otherwise, defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Id.* If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id.* at 1166. But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.*

The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy. *Id.* at 1172; *see id.* at 1176 (reversing district court's grant of summary judgment to defendants on issue of exhaustion because defendants did not carry their initial burden of proving their affirmative defense that there was an available administrative remedy that prisoner plaintiff failed to exhaust); *see also Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005) (as there can be no absence of exhaustion unless some relief remains available, movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting results of relief

6

already granted as result of that process). Once the defendant has carried that burden, the prisoner has the burden of production. *Albino*, 747 F.3d at 1172. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id*. But as required by *Jones*, the ultimate burden of proof remains with the defendant. *Id*.

### B. Analysis

Defendants direct the Court to eight administrative grievances filed by plaintiff during his time at PBSP. *See* Voong Decl. Exs. A-J. Defendants represent that one of these grievances—IAB Case No. 1414892—addressed the issues raised in this action. As defendants point out, this grievance was rejected at the third level of review because plaintiff failed to first submit the grievance to lower levels of review. *See id.* Ex. J. Were this the only grievance challenging the religious accommodations at issue here, defendants would be correct that plaintiff failed to properly exhaust. *Woodford*, 548 U.S. 81, 84 (2006) (PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal."). Defendants fail to address, however, plaintiff's earlier grievance—PBSP-14-2313— in which plaintiff challenged the prison's failure to grant KAGE the same religious accommodations afforded to prisoners of other religious beliefs. *See* Voong Decl. Ex. B. This grievance was partially granted at the second level of review on October 14, 2014. *See* Sheldon Decl. Ex. B. Specifically, PBSP warden C.E. Ducart issued the second level review decision, stating in pertinent part:

> ● Inmate Brown's request to be able to practice his truly held religious belief is GRANTED at the Second Level Review. Inmates at PBSP are free to worship and believe in their truly held religious beliefs.
> . . . .
> ● Inmate Brown's request to allow United Kings against Genocidal Environments (KAGE) Brothers religious services on A Facility is PARTIALLY GRANTED at the Second Level Review. When the necessary steps to form a religious group have been met, PBSP will make every effort to provided [sic] religious accommodations.
> . . . .
> ● Inmate Brown's request to [sic] United KAGE Brothers the use of PBSP facilities to conduct meetings and to meet with outside groups is PARTIALLY GRANTED at the Second Level Review. When the necessary steps to form a religious group have been met, PBSP will make every effort to provided [sic] religious accommodations.

*See id.* PBSP-14-2313 clearly alerted "the prison to the nature of the wrong for which redress is sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). "A grievance need not include legal terminology or legal theories [and] also need not contain every fact necessary to prove each element of an eventual legal claim." *Id.* Defendants do not contend otherwise. Rather, they argue that PBSP-14-2313 did not exhaust plaintiff's administrative remedies because it was screened out at the third level of review on December 10, 2014 for failure to meet time constraints. *See* Voong Decl. Ex. B.

"An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies." *Harvey v. Jordan*, 605 F.3d 681, 685 (9th Cir. 2010). In *Harvey*, the prisoner plaintiff had filed a grievance, requesting a timely hearing on a disciplinary charge, and received a decision granting him relief. *See id.* at 684-85. Five months later, having still received no hearing, the prisoner filed an appeal at the second level of review, which was rejected as untimely. *See id.* at 685. The Ninth Circuit concluded that the prisoner had indeed exhausted his claim, reasoning, "Once the prison officials purported to grant relief with which [the prisoner] was satisfied, his exhaustion obligation ended. His complaint had been resolved, or so he was led to believe, and he was not required to appeal the favorable decision." *Id.* Such is the case here, where plaintiff appears to have received a satisfactory response at the second level of review with respect to his religious accommodation claims.

The record is unclear as to why plaintiff pursued his appeal to the third level. It may be as simple as plaintiff believing it was required of him or reminding the prison that his requests had been granted after still not receiving the accommodations. As in *Harvey,* these "reminder" appeals "cannot reasonably be construed as an appeal of the decision granting him [relief]." *Id.* at 685. In any event, in light of *Harvey*, defendants fail to meet their burden of showing that plaintiff had any further remedies available to him before bringing this action. *See Albino*, 747 F.3d at 1171.

Defendants suggest that plaintiff was required to file and exhaust a grievance alleging that defendant Losacco was preventing plaintiff from forming his religious group after plaintiff had filed the necessary paperwork. *See* dkt. no. 39 at 10. Defendants point to no legal authority, in the California prison regulations or elsewhere, showing that plaintiff was required to restart the

8

appeals process after completing paperwork for forming a religious group. It is not "the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised." *Harvey*, 605 F.3d at 685. *See Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004) ("A prisoner who has not received promised relief is not required to file a new grievance where doing so may result in a never-ending cycle of exhaustion."). To the extent plaintiff was denied religious accommodation based on lack of paperwork, this is more appropriately raised in a motion for summary judgment on the merits.

Based on the foregoing, it is a disputed issue whether plaintiff failed to properly exhaust all available administrative remedies with respect to his claims against defendants. *See Albino*, 747 F.3d at 1172. Plaintiff has produced evidence showing that there was something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Albino*, 747 F.3d at 1172. Because there are disputed issues of fact, defendants are not entitled to summary judgment under Rule 56 based on a failure to exhaust administrative remedies. *Id.* at 1166.

**CONCLUSION**

For the foregoing reasons, the Court orders as follows,

1. Defendants' motion to dismiss is GRANTED. Plaintiff's injunctive relief claims, including his RLUIPA claim—for which only injunctive relief is available—are DISMISSED.

2. Defendants' motion for summary judgment for failure to exhaust is DENIED.

3. In order to expedite the resolution of this case, the Court orders as follows:

a. No later than **91 days** from the date this order is filed, defendants shall file a motion for summary judgment addressing the merits of the remaining claims. A motion for summary judgment also must be accompanied by a *Rand* notice so that plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment).

If defendants are of the opinion that this case cannot be resolved by summary judgment, defendants must so inform the Court prior to the date the motion is due.

9

b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon defendants no later than **28 days** from the date the motion is filed. Plaintiff must bear in mind the notice and warning regarding summary judgment provided below as he prepares his opposition to any motion for summary judgment.

c. Defendants shall file a reply brief no later than 14 days after the date the opposition is filed. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion.

4. Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact—that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in [current Rule 56(c)], that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc) (App. A).

(The *Rand* notice above does not excuse defendants' obligation to serve said notice again concurrently with a motion for summary judgment. *Woods*, 684 F.3d at 939).

5. Plaintiff's renewed request for appointment of counsel and expert witness (dkt. no. 58), is DENIED for the reasons given in the Court's previous orders denying these requests. Plaintiff has also filed four communications with the Court, which were docketed as motions. The communications are difficult to understand, but the Court believes they either have been inherently addressed herein or pertain to claims that have already been dismissed as unrelated to this action.

Accordingly, the Clerk shall administratively terminate docket numbers 50, 51, 56, and 62.

This Order terminates docket numbers 39, 50, 51, 56, 58, and 62.

**IT IS SO ORDERED.**

Dated: 6/28/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge