UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM E. BROWN,<br>    Plaintiff,<br>v.<br>R. AMIS, et al.,<br>    Defendants. | Case No. 16-cv-00603-HSG (PR)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. No. 66 |

## INTRODUCTION

On March 3, 2016, plaintiff, an inmate at California State Prison, Los Angeles County ("CSP-LAC"), filed a *pro se* complaint under 42 U.S.C. § 1983. Plaintiff's original complaint was dismissed with leave to amend on the grounds that the claims were difficult to discern, and there was a wide variety of claims that were improperly joined, in violation of Federal Rule of Civil Procedure 20(a). On October 3, 2016, plaintiff filed an amended complaint alleging violation of his religious rights at Pelican Bay State Prison ("PBSP"), where he was previously incarcerated. The Court found that, when liberally construed, plaintiff's allegations appeared to state cognizable claims under § 1983 for violation of the First Amendment, Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act. ("RLUIPA"), 42 U.S.C. § 2000cc-1. Defendants PBSP correctional officer Espinoza, PBSP lieutenant R. Amis, and PBSP community resource manager Robert Losacco were ordered served.

On June 28, 2018, the Court granted defendants' motion to dismiss plaintiff's injunctive relief claims and RLUIPA claim and denied defendants' motion for summary judgment on exhaustion grounds. Dkt. No. 63. The Court denied defendants' summary judgment motion on the grounds that, in Grievance No. PBSP-14-2313, plaintiff exhausted his claim regarding the prison's failure to grant his religious groups the same religious accommodations as prisoners of other religious beliefs, and that plaintiff was not required to appeal Grievance No. PBSP-14-2313 to a final level of review because he was granted the relief sought at the second level of review.

Dkt. No. 63 at 7-9. *See Harvey v. Jordan*, 605 F.3d 681, 685 (9th Cir. 2010) ("An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies.").

Defendants have filed a motion for reconsideration of the Court's June 28, 2018 order insofar as it did not specifically address defendants Espinoza and Amis's non-exhaustion defense with respect to plaintiff's claim that Espinoza and Amis confiscated his religious materials in January 2015 and denied him the right to assemble.[1] Plaintiff has not filed an opposition, and the time in which to do so has passed.

## DISCUSSION

According to the amended complaint, plaintiff belongs to a religious community that identifies itself as United Kings against Genocidal Environments ("KAGE"). Dkt. No. 25 at 7-8, 14.[2] Plaintiff alleges that on January 13, 2015, non-defendant prison chaplain Alex Valuiski permitted KAGE members to assemble in the PBSP Facility A chapel. *Id.* at 7. At or around this time, however, defendants Amis and Espinoza confiscated plaintiff's religious materials and denied him the right to religious assembly. *Id.* at 7-8, 12. Plaintiff further asserts that defendant Losacco prohibited plaintiff from assembling in the prison chapel until he changed the name of his religious ideology to that of a nonreligious group known as Prisoners Embracing Anti-Hostilities Cultural Evolution ("PEACE"). *Id.* at 14. Plaintiff asserts that defendant Losacco and non-defendant PBSP Warden Ducart had previously granted KAGE the right to religious assembly via a formal grant of plaintiff's inmate appeal, PBSP-A-14-2313. *Id.* This grant was made without any condition that the group change its name. *Id.*

In their motion for reconsideration, defendants argue that plaintiff's Grievance No. PBSP-14-2313 could not have exhausted administrative remedies as to Amis and Espinoza because it: (1) only grieved the denial of plaintiff's right to religious assembly whereas the instant action

---

[1] The Court granted defendants leave to file a motion for reconsideration pursuant to Local Rule 7-9(a) on August 7, 2018. Dkt. No. 65.

[2] All page numbers used herein refer to those affixed to the top of the page by the Court's electronic filing program.

2

alleges that Amis and Espinoza denied him the right to religious assembly AND confiscated his religious materials; and (2) failed to name Amis and Espinoza as wrongdoers and indeed could not have named them because their alleged involvement took place in 2015, i.e., after the grievance was filed.

Compliance with prison grievance procedures is all that is required by the Prison Litigation Reform Act of 1995 ("PLRA") to properly exhaust. *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). In California, the regulation requires the prisoner "to lodge his administrative complaint on CDC form 602." *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (citing Cal. Code Regs. tit. 15 § 3084.2(a)). Where a prison's grievance procedures do not specify the requisite level of factual specificity required in the grievance, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). The grievance need not include legal terminology or legal theories unless they are needed to provide notice of the harm being grieved. *Id.* Nor must a grievance include every fact necessary to prove each element of an eventual legal claim. *Id.* The purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. *Id.* The grievance should include sufficient information "to allow prison officials to take appropriate responsive measures." *Id.* at 1121 (citation and internal quotation omitted).

Regarding defendants' argument that plaintiff's grievance did not specifically address any confiscation of religious materials, the Court notes that in PBSP-A-14-2313, plaintiff broadly complained about his lack of religious rights, describing the subject of his appeal as the "denial of free exercise of religious belief in violation of First Amendment and Religious Land Use and Institutionalized Persons Act." Dkt. No. 39-3 at 4. Although he focused on the need for accommodations to hold congregate services, he specifically pointed out that he was an ordained minister and asked broadly for the same rights afforded to prisoners of other religious beliefs. *See id.* at 4, 6. The relief granted to plaintiff at the second level was also broad, stating in part:

● Inmate Brown's request to be able to practice his truly held religious belief is GRANTED at the Second Level Review. Inmates at PBSP are free to worship and believe in their truly held religious beliefs.

3

Dkt. No. 39-3 at 3.

The grievance, liberally construed, was sufficient to alert prison officials that plaintiff was being denied the right to lead his religious community, which would reasonably include access to religious materials. A prisoner who wants relief would help himself greatly by making his grievance as clear as possible, but the administrative exhaustion requirement does not require the optimal presentation of a claim. Indeed, in this instance there was no reason for plaintiff to anticipate that his religious materials would be confiscated. In any event, no reasonable officer familiar with the second level relief granted to plaintiff would have believed it appropriate to confiscate his religious materials.[3] The Court concludes that PBSP-A-14-2313 was sufficient to exhaust administrative remedies as to both the religious assembly claim and the confiscation of religious documents claim. *See Griffin*, 557 F.3d at 1120; *Jones*, 549 U.S. at 217-18.

Regarding defendants' argument that plaintiff failed to name Amis and Espinoza in his grievance, defendants point to California regulations requiring an inmate to list all staff members involved in the issue and describe their involvement. *See* Cal. Code Regs. tit. 15, § 3084.2(a)(3). Defendants are correct that since January 28, 2011, the operative regulation has required that prisoners using the CDCR's inmate appeal system must list the name(s) of the wrongdoer(s) in their administrative appeals. Section 3084.2 was amended in 2010 (with the 2010 amendments becoming operative on January 28, 2011), and those amendments included the addition of subsection (a)(3). *See* Cal. Code Regs., tit. 15 § 3084.2 (history notes 11-12 providing operative date of amendment).

Here, however, the 602 form provided to plaintiff has a revision date of 08/09, showing that it was outdated. *See* Dkt. No. 39-3 at 4. The form did not ask plaintiff to list the names of the people involved in denying his religious rights. Rather, it simply asked plaintiff to explain his issue and the action requested. *See id.* He did so. Where an inmate has provided the information requested on the form provided, he has availed himself of the administrative process the state

---

[3] As noted in the Court's June 28, 2018 order, if there was a penological purpose for confiscating the religious materials, this is more appropriately raised in a motion for summary judgment on the merits.

4

made available to him; that is all that the PLRA requires of him. *See Butler v. Rianda*, 397 F.3d 1181, 1183 (9th Cir. 2005) (California prisoner exhausted administrative remedies by filling out ADA accommodation form even though he did not identify the wrongdoers on the form because the form asked him to "describe the problem" and declare "what specific modification or accommodation is requested" but did not require him to identify any specific persons); *Jones*, 549 U.S. at 218 (holding that because the Michigan Department of Corrections' procedures make no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted).

Defendants are correct that the acts allegedly committed by Amis and Espinoza occurred in 2015, i.e., after plaintiff had filed his 2014 grievance. However, defendants point to no authority, and the Court is aware of none, holding that a prisoner must restart the appeals process once he has already received a grant of relief simply because the same wrong is committed by a new person. *See Harvey*, 605 F.3d at 685 (It is not "the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised."); *Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004) ("A prisoner who has not received promised relief is not required to file a new grievance where doing so may result in a never-ending cycle of exhaustion.").

**CONCLUSION**

1. For the foregoing reasons, defendants' motion for reconsideration is DENIED.

2. In order to expedite the resolution of this case, the Court orders as follows:

a. No later than **91 days** from the date this order is filed, defendants shall file a motion for summary judgment addressing the merits of the remaining claims. A motion for summary judgment also must be accompanied by a *Rand* notice so that plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment).

If defendants are of the opinion that this case cannot be resolved by summary judgment, defendants must so inform the Court prior to the date the motion is due.

b. Plaintiff's opposition to the summary judgment or other dispositive motion must

5

be filed with the Court and served upon defendants no later than **28 days** from the date the motion is filed. Plaintiff must bear in mind the notice and warning regarding summary judgment provided below as he prepares his opposition to any motion for summary judgment.

        c. Defendants shall file a reply brief no later than 14 days after the date the opposition is filed. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion.

    3. Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact—that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in [current Rule 56(c)], that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc) (App. A).

(The *Rand* notice above does not excuse defendants' obligation to serve said notice again concurrently with a motion for summary judgment. *Woods*, 684 F.3d at 939).

This order terminates Dkt. No. 66.

**IT IS SO ORDERED.**

Dated: 11/28/2018

                              HAYWOOD S. GILLIAM, JR.
                              United States District Judge